**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **NATIARA JAMES** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 11-484-DLD** |
| **MICHAEL J. ASTRUE, Commissioner of Social Security** | **CONSENT CASE** |

## RULING

Plaintiff seeks judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits. In making that final decision, the Commissioner reached the fifth and final step of the five-step sequential disability analysis set forth in 20 C.F.R. § 404.1520(b)-(f) & § 416.920(b)-(f).[1] The Commissioner determined that plaintiff had severe impairments of depression and anxiety and that these impairments prevented plaintiff from performing her past relevant work as a cashier and fast food worker. (TR 25, 27) The Commissioner also determined, however, that the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: "limited contact with public workers and can perform simple one-two step tasks." (TR 27)

In reaching this decision, the ALJ considered the medical evidence, the testimony of the claimant, and the VE testimony in finding that plaintiff would be able to perform the requirements of representative occupations such as housekeeper/cleaner, dishwasher, and food prep worker. (TR 29) Pursuant to SSR 00-04p, the ALJ found that the VE testimony was consistent with the information contained within the Dictionary of Occupational Titles ("DOT"). *Id.* Also, after considering the evidence, the ALJ found that the plaintiff's

---

[1] *See, e.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC. (TR 28)  Thereafter, following consideration of the testimony of an impartial vocational expert, and relying on the medical-vocational guidelines as a framework for decision, the Commissioner  determined that plaintiff was not disabled within the meaning of the Social Security Act.

***Background***

Plaintiff protectively filed an application for disability benefits on July 14, 2008 (TR 101-102), alleging an amended disability onset date of October 1, 2007 (TR 38),[2] due to "mental depression and anxiety, broken ankle" and "right shoulder," conditions which limited her ability to work because she sometimes cannot concentrate, is on medication, and she is unable to get up in the mornings.  (TR 130) The claim was initially denied on September 17, 2008. Plaintiff filed a timely request for hearing; a hearing was held on November 12, 2009; and an unfavorable decision was rendered on February 19, 2010 (TR 23-30), finding that plaintiff was not disabled from January 1, 2002, plaintiff's original alleged onset date, through December 31, 2007, the date last insured.  (TR 30) On the date last insured, December 31, 2007, plaintiff was 37 years old, had a limited education, and was able to communicate in English. (TR 28-29) Plaintiff appealed the ALJ's decision, and the Appeals

---

[2]Plaintiff's original onset date was January 1, 2002.  During the administrative hearing, counsel for plaintiff amended the onset date to October 1, 2007, for procedural reasons.

Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.

In this appeal, plaintiff contends that the ALJ's assessment of her mental RFC is unsupported by substantial evidence, and the ALJ committed reversible error by neglecting to make specific findings regarding sustainability of employment.

### *ISSUE*

The issue before this Court is whether the Commissioner's finding that plaintiff was not disabled for the period October 1, 2007, through the date last insured[3], is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g).

### *GOVERNING LAW*

The Social Security Act provides for the payment of benefits to persons who have contributed to the program and "who suffer from a physical or mental disability." *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), *citing* 42 U.S.C. § 423(a)(1)(D)(1991). As used in the Act, the term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months. *Id., citing* 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1987).

---

[3]Here, plaintiff filed for disability benefits only, and her insured status for these benefits only extended through December 31, 2007, otherwise known as her "date last insured." Therefore, plaintiff has to establish that her combination of impairments rendered her disabled on or before that date.

In reviewing the Commissioner's decision to deny benefits, the Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *E.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id.* Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id.* A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id*.

However, the substantial evidence standard of review is not a mere rubber stamp for the Commissioner's decision, and it involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Id.*

To determine whether a disability exists for purposes of the Act, the Commissioner must weigh the following elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

At steps one through four of the five-step sequential analysis, the overall burden of proving disability under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1985). The determination of a claimant's residual functional capacity ("RFC") between steps three[4] and four is exclusively reserved for the Commissioner rather than for the claimant's physicians. If a claimant proves that he no longer is able to work in his prior job, then the burden shifts to the Commissioner to show that there is some other type of substantial gainful activity that the claimant can perform. *Id.* Thus, in cases such as this one where the Commissioner determines that the claimant cannot perform his past relevant work and accordingly reaches the fifth step of the five-step disability sequential analysis,[5] the Commissioner bears the burden of establishing that there is other work in the economy that the claimant can perform. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). If the Commissioner adequately points to potential alternative employment, the ultimate burden of persuasion then returns to the claimant to prove his inability to perform those jobs. *Id.*; *Kraemer v. Sullivan*, 885 F.2d 206 (5th Cir. 1989).

---

[4] Listing impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. At the third step, for a claimant to show that his impairment matches a Listing he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529–32, 110 S.Ct. 885, 891–92, 107 L.Ed.2d 967 (1990); 20 C.F.R. § 404.1525.

[5] The Commissioner uses a five-step sequential analysis to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir.2005); *Masterson v. Barnhart*, 309 F.3d 267,271-72 (5th Cir.2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir.2000). See, also, 20 C.F.R. § 404.1520.

## DISCUSSION AND ANALYSIS

Plaintiff argues that she presented substantial evidence of a chronic mental impairment (depression and anxiety) which prevents her from sustaining continuous employment, and therefore the ALJ's decision should have included a specific determination regarding plaintiff's ability to sustain employment for a "significant amount of time." (rec.doc. 13-1) Plaintiff contends that the ALJ's failure to make this specific determination is legal error, and cites to *Singletary v. Bowen*, 798 f. 2d 818, 822 (5th Cir. 1986) in support of her contention; however, plaintiff also acknowledges that the ALJ need not make specific findings regarding sustainability of employment unless there is "evidence that a claimant's ability to maintain employment would be compromised." *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Id.

The court notes that the Fifth Circuit narrowed *Singletary*, holding that the ALJ is not always required to make a specific finding regarding the claimant's ability to maintain employment in every case. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir.2003). Rather, specific findings regarding the claimant's ability to maintain employment are required only in "situation[s] in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* (*citing Watson v. Barnhart*, 288 F.3d 212 (5th Cir.2002)) (emphasis added). If the claimant does not make such a showing, the "claimant's ability to maintain employment is subsumed in the RFC determination." *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir.2005) (*citing Frank*, 326 F.3d at 618).

Thus, in order to trigger specific findings regarding the sustainability of employment, plaintiff must set forth evidence of two factors: 1) that her ability to sustain employment is compromised by her depression and/or anxiety symptoms; and 2) her condition, by its very

6

nature, waxes and wanes in its manifestation of disabling symptoms. Also, plaintiff cannot support her claim with conclusory statements; she must submit medical or other evidence to support her claim. See 20 C.R.R. §§ 404.1512(a), 416.912(a).

In a disability benefits case, the only relevant dates are for the time period between the alleged onset date of disability and the date last insured.  *See, e.g., Williams v. Astrue*, 2007 WL 2727122, *4 (W.D.Tex. 2007) For plaintiff, this means the relevant time period is between October 1, 2007, and December 31, 2007. At the outset, the court notes that while most of the medical evidence discussed by the ALJ, plaintiff, and defendant concerns plaintiff's medical condition as it existed after the date last insured, at issue here for purposes of appeal is only that medical evidence between October 1, 2007, and December 31, 2007.  Between October 1, 2007, and December 31, 2007, plaintiff had just three visits to either a psychiatrist or a social worker before her insured status expired.  In those three visits, she reported crying spells, mood swings, irritability, and forgetfulness.  (rec.doc. 13-1, pg. 2)

A review of the ALJ's decision reflects that he discussed the plaintiff's condition both before and after the insured period.  He first discussed the period leading up to the insured period of October 1, 2007 through December 31, 2007, when he noted that plaintiff began treatment with the Baton Rouge Mental Health Center ("BRMHC") in 2001 for symptoms of mood swings, irritability, and poor sleep habits, and she also reported having a disruptive home environment with corresponding impaired concentration and forgetfulness.  The ALJ also commented that on January 25, 2007, which is still before the operative dates, BRMHC noted that plaintiff had been non-compliant with her medication; plaintiff was not sleeping, seeing things, had rapid cycling moods, and had suicidal thoughts in addition to

irritability and crying spells. However, notably, by August 9, 2007, almost two months before the alleged onset date of disability, plaintiff was no longer having auditory or visual hallucinations, or any manic episodes. The ALJ specifically noted that plaintiff had been inconsistent in keeping doctor's appointments and taking her medications as prescribed; and he pointed out that plaintiff's medications, when taken consistently, historically provided relief for her anxiety and depression. (TR 25-26).

Moreover, while plaintiff makes the conclusory statement that her ability to maintain employment was compromised, she has not put forth any evidence in support of that contention that applies during the relevant time period. It is not enough that she have ups and downs, those "downs" must be disabling to the point of rendering her not able to sustain employment. For example, an incapacity or periodic "down period" whose severity caused her to miss work on a regular basis would show an inability to maintain employment, even though she had days when she could work. A review of the evidence, however, whether during the relevant time period or prior to the relevant time period, shows that it does not reflect any opinion or suggestion that plaintiff's ability to maintain any employment was compromised by her depression and/or anxiety symptoms. Plaintiff has not cited to any medical or other evidence that her symptoms affected her ability for sustained employment. As the ALJ discussed, the evidence instead, in conjunction with the RFC, established limitations on the kinds of employment she could perform. Thus, under either *Singletary* or *Dunbar*, the ALJ was not required to make a specific finding regarding her ability to sustain employment.

Moreover, even assuming *arguendo* that plaintiff had provided some evidence that her ability to maintain employment was compromised, *Frank* narrowed *Singletary* to the

extent that a specific finding on plaintiff's ability to maintain employment was required only in situations where the condition, by its very nature, waxes and wanes. Plaintiff has cited to no cases where simply having a diagnosis of depression and/or anxiety equates to having a condition that waxes and wanes by its very nature. While it may be true that in some cases a claimant's depression and anxiety waxes and wanes, and may even result in a finding of disability, it is plaintiff's burden to set forth evidence that *her* depression and anxiety does so. Here, the evidence shows that plaintiff reported nearly the same or similar symptoms consistently, and that her symptoms worsened when she was non-complaint with her recommended treatment or medications. None of these records make any statement that any of plaintiff's disabling symptoms of mental impairments wax and wane, or that she can work—but only for short spans of time. Thus, the ALJ was not required under *Frank* to make a specific finding on sustainability because plaintiff put forth no evidence that her condition waxed and waned during the relevant time period.

Finally, the court notes that the remaining evidence cited by plaintiff concerns some 18 visits occurring after the expiration of her insured status. Unfortunately, evidence showing a degeneration of a claimant's condition after the expiration of her Title II insured status is not relevant to the Commissioner's Title II disability analysis in this case. *See Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir.1995). That she may or may not subsequently have become disabled does not mean that she was disabled for purposes of the instant matter.

Thus, it is clear that none of the evidence during the relevant time period establishes the severity or frequency of plaintiff's symptoms, or the waxing and waning of such symptoms, which would trigger a separate inquiry by the ALJ of plaintiff's ability to

9

sustain gainful employment pursuant to *Singletary, Dunbar,* or *Frank*. As plaintiff did not meet her burden of proof that her ability to maintain employment was compromised, or that her ailment waxes and wanes in its manifestation of disabling symptoms, her ability to maintain employment is subsumed in the RFC determination. *Perez*, at 465.

Substantial evidence therefore supports the ALJ's determination that plaintiff could perform the full range of work with certain non-exertional limitations. Therefore, although the ALJ did not reach a result that was favorable to the plaintiff, his determination was well reasoned and supported by the substantial evidence in the record and was reached using the proper legal standard.

## **CONCLUSION**

Accordingly, for the reasons assigned, the decision of the Commissioner denying DIB benefits will be affirmed, and the complaint of Natiara James will be **DISMISSED**, with prejudice.

Signed in Baton Rouge, Louisiana, on September 18, 2012.

**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **NATIARA JAMES** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 11-484-DLD** |
| **MICHAEL J. ASTRUE**, Commissioner of Social Security | **CONSENT CASE** |

## FINAL JUDGMENT

In accordance with written reasons assigned this date,

**IT IS ORDERED, ADJUDGED AND DECREED** that the decision of the Commissioner denying benefits shall be and hereby is **AFFIRMED** and that plaintiff's complaint hereby is **DISMISSED**, with prejudice.

Signed in Baton Rouge, Louisiana, on September 18, 2012.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**